UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYRELL BERRINGTON JACKSON,

    Petitioner

v.

DENNIS HARRISON, Warden

    Respondent.

Civil Action No. 05-1969(RMU)

**RECEIVED**
**SEP 11 2006**
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MOTION FOR SUMMARY JUDGMENT AND AFFIDAVIT IN SUPPORT

Comes now the petitioner, Tyrell Berrington Jackson, pro se, and moves this honorable court to grant him "Summary Judgment" pursuant to Rule 56(c) of the Federal Rules of Civil Procedures, and grounds makes the following declarations in his "Affidavit In Support."

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing "Motion For Summary Judgment and Affidavit In Support" has been mailed to Sherri L. Berthrong, Assistant U.S. Attorney, Special Proceedings Section, 555 4th Street, N.W., Room 10-450, Washington, D.C. 20530 this __8__ day of __18__ 2006.

*Tyrell Berrington Jackson*
Tyrell Berrington Jackson

RECEIVED
SEP 1 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TYRELL BERRINGTON JACKSON,

  Petitioner

v.

DENNIS HARRISON, Warden   Civil Action NO. 05-1969(RMU)

  Respondent.

## A F F I D A V I T

  Affiant deposes and says that the statements made herein are true and made under the penalty of perjury.

1. Affiant avers that on October 26, 1998, the D.C. Board of Parole revoked his parole and ordered a "reconsideration hearing to be held on August 25, 1999," never informing affiant at the revocation hearing that any of his "**street time**" would be forfeited or did the D.C. Board of Parole forfeit any of affiant's "**street time**."

2. Affiant avers that on November 15, 1999, following affiant's "reconsideration hearing," the U.S. Parole Commission grant affiant parole effective August 10, 2002, never informing affiant during the course of the "reconsideration hearing" that any of affiant's "**street time**" **had been or would be forfeited**."

3. Affiant avers that none of his conditions of parole prior to

October 1998 or prior to affiant being released on parole August 12, 2002, ever stated that if affiant violated his parole, that any or all of his **street time** would be forfeited.

4. Affiant avers that while he was on parole prior to October 1998, or prior to his release date of August 12, 2002, did he ever receive a copy of the **"Notice To All Inmates"** issued by the D.C. Dept. of Corrections stating that based on the decision of **Noble v. U.S. Parole Commission**, that the Bureau of Prisons and the D.C. Dept. of Corrections were obligated to correct his sentence computations by withdrawing credit for all time spent on parole, from either his parole officer, the D.C. Dept. of Corrections, the D.C. Board of Parole, the U.S. Parole Commission or the Federal Bureau of Prisons that his sentence computation would be changed or had been changed.

5. Affiant avers that pursuant to **Noble v. U.S. Parole Comm'n, 32 F.Supp.2d 11, at 14,** the court stated that the parties had agreed that from April 11, 1987 until April 23, 1998, if a parolee such as affiant was under the supervision of the D.C. Board of Parole, none of said parolee's **street time** would be forfeited.

6. Affiant avers that the D.C. Dept. of Corrections, the U.S. Parole Commission and the Federal Bureau of Prisons have violated substantial "Due Process Rights of affiant by their arbitrary and capricious actions which was prejudicial to affiant where they have rescinded and computed affiant's sentence without following

-2-

the proper procedures pursuant to the D.C. Administrative Procedure Act.

7. Affiant avers that he was always under the supervision of the D.C. Board of Parole from April 11, 1987 until April 23, 1998, and because the D.C. Board of Parole consistently followed D.C. Code § 24-431, and D.C. Municipal Regulation, Title 28 § 601.7, and was awarding D.C. parolees with credit for their **Street time** therefore, affiant had a legitimate expectation of receiving all of his **street time** from April 11, 1987 until April 23, 1998.

8. Affiant avers that he is entitled to all of his **street time** from April 11, 1987 until April 23, 1998.

9. Affiant avers that the Respondent, the D.C. Dept. of Corrections, and the Federal Bureau of Prisons violated the **"Accardi Doctrine"** by their failure to follow the procedures and regulations of the D.C. Administrative Procedure Act, *Etc.*.

10. Affiant avers that the D.C. Dept. of Corrections violated the **"Accardi Doctrine"** by its failure to exercise its own discretion, contrary to the valid regulations contained in D.C. Code § 24-431, and D.C. Municipal Regulation, Title 28 § 601.7, by rescinding the grant of **"street time"** to affiant and not publishing that such regulation had been waived, suspended or abolished.

11. Affiant avers that it is well established by the **"Accardi Doctrine"** that rules and regulations promulgated by an administra-

tive agency cannot be waived, suspended or disregarded in a particular case as long as such rules and regulations remain in force.

12. Affiant avers that neither D.C. Code 24-431(now 24-221 et. seg.) nor Municipal Regulation Title 28 § 601.7 have been abolished, suspended or waived, and remain in full force, therefore, the Due Process Clauses required the D.C. DEpt. of Corrections to follow their own rules, even those promulgated gratuitously.

13. Affiant avers that once D.C. Code § 24-431 was placed in the D.C. Register and enacted into law, and **codified** in Municipal Regulation, Title 28 § 601.7, these laws were the rule-of-law in the District of Columbia, to be followed by District of Columbia agencies.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the statements made herein are true and correct.

County/City of Hertford
Commonwealth/State of North Carolina
The foregoing instrument was acknowledged before me this 6th day of July 2006, by Tyrell Jackson
(name of person seeking acknowledgment)
_____
Notary Public
My commission expires July 12, 2010

Tyrell Berrington Jackson

See Exhibit -A- through -B

-4-

DISTRICT OF COLUMBIA COURT OF APPEALS
772A.2d 204;2001 D.C. App.LEXIS 104

GLICKMAN. Associate Judge: A few years ago in United States V. Noble, 693 A.2d 1084. 1095 (D.C. 1997) Op. Adopted. 711 A.2d 85 (D.C.1998) (en banc), Appellants Contend that our holding in Noble Announced A New rule of law which enhances the punishment imposed on D.C. Code Offenders if they violate the terms of their Parole Claiming that there was widespread reliance in the District of Columbia on the Pre-Noble understanding that Parole revocation would not result in loss of street time, Appellants invoke the Equitable balancing test that this court took in mensdes V.Johnson, 389 A. 2d 781 (D.C.1978) (En banc), To Argue that Noble must be applied prospectively only. Application of Noble to increase their sentences would not only be inequitable under Mendes, but would also violate the Ex Post Facto and due process clauses of the constitution.

The Second statute was enacted fifty-five years later by the Council Of The Distric Of Columbia as part of the good time credits Act of 1986 (GTCA), D.C. Law 6-218,§ 5.34 D.C. Reg. 484 (1987). This statute which took effect in 1987, provides among other things that D.C. Code offenders get credit for their street time against the service of their sentence. the language of the statute is that every person shall be given credit on the maximum and the minimum term of imprisonment for the time spent in custody or on parole as a result of the offense for which the sentence was imposed. D.C. Code § 24-431 (A) (1996). unlike § 24-206 (A), however, tha G T C A does not specifically address whether the street time forfeiture provision of § 24-206 (A) remained in force surface almost immediately after the G T C A went into effect. The Distric Of Columbia Corparation Counsel advised the Department Of Corrections that in its opinion the G T C A Implicitly repeal the provision of § 24-206 (A) that required forfeiture of street time upon revocation of parole. See Noble,693 A.2d At1095. In reliance on the Corporation Counsel's opinion, the Department of Corrections issued an order, And Thereafter A formal regulation, providing that henceforth revocation of parole would not result in loss of credit for street time, toward service of the sentence for which parole had been granted. See 35 D.C. Reg. 1077.1078 (1988). Because The Commission And the District disagreed over wheather the G T C A repealed the street time forfetiure provision of § 24-206 (A) offenders sentenced in ther distric to imprisonment were subject to disparate treatment upon revocation of their parole. The disparity depended on where the Attorney General chose to designate them to serve their sentences.

Pursuant to D.C. Code § 24-425 (1996). The Attorney General has custody over all prisoners convicted in the District and has unfettered discretion to designate them to prisons maintained by The District of Columbia Government of by Federal govrnment.

Exhibit - A

A. Constitutional challenges to reteoactivity

1. Prohibition against Ex post Facto Laws.

In response to our decision in Noble, the Department Of Corrections stopped abiding by it's 1988 regulation which preserved street time credit following revocation of parole, and started applying the rule that prisoners forfeited their street time when their parole was revoked. Appellants argue that the 1988 regulation was the law in effect when they committed their offenses, and that therefore the Department's retroactive application of A new rule which made their punishment more onerous by depriving them of street time credit infringed the constitutional prohibition against Ex Post Facto Laws. Retroactive application of A law that imposes a greater punishiment than the law in effect when the crime was committed is forbidden by the Ex Post Facto clauses of The Constitution. n6 See Lynce V. Mathis, 519 U.S. 433,439-41,137L Ed. 2d 63, 117 S. Ct. 891 (1997); Weaver V. Graham, 450 U.S. 24, 28-29,67L Ed.2d 17. 101 S. Ct 960 (1981). A ststute retroactively increasing the Penalties imposed upon revocation of Parole would fall within The prohibition, see Johnson V. United States, 529 U.S. 694, 701,146 L Ed. 2d 727,120 S. Ct. 1795 (2000). And since Administrative regulatioins that are validly promulgated pursuant to statutory authority have the force And effect of statutes, See Dankman V. District of Columbia Bd. of Elections and ethics, 443 A. 2d 507, 513 (D.C. 1981) (en banc), We agree with Appellants that a new regulation which enhances punishment beyond what was formerly authorized by A valid penal regulation is within The Ex Post Facto Prohibition.

2. Due Process

Appellants have a second string to their Constitutional bow, And with it they Aim their arrow directly at this court's decision in Noble. Citing Bouie V. City Of columbia, U.S. 347 12 L. Ed 2d 894,84 S. Ct. 1697 (1964), Appellants argue that our construction of the G T C A in Noble was so unwxpected and contrary to the prevailing view that it would offend due process to apply our holding retroactively. In bouie The Supreme court overturned convictions under A state criminal trespass statute because the State Supreme Court's Unforeseeable and retroactive" Expahsion of the statute constituted A daprivation of the right of fair warning"guaranteed by due Process. Id. at 352. The Court reasoned that "an unforeseeable judicial enlargement of a criminal statute,Applied retroactively, Operates precisely like an Ex Post Facto Law... If a state legislature is barred by the Ex Post Facto Clause form Passing such A law. It must follow that A state supreme cour is barred by the due process clause form achieving precisely the same result by Judicial construction...


Exhibit - B

B. Non Constitutional Cahallenge to retroactively.
We have concluded that retroactive application of Noble comports with due process. The remaining question is whether equitable considerations may yet require us to deny retoactive effect to our holding in Noble even where the constitution does not. In toher words, though lacking cositutional justification, Are we nonetheless required- Are we even permitted- to disregard the governing law when we happen to think it "FAIR" to do so. And thus to excuse prisoners from serving their statutorily mandated sentence?

1. None Retroactively Under Mendes V. Johnson

In Asking us to exempt Noble from the fundamental rule of retrospctive operation that has governed judicial decisions. ..for nearly A thousand years," n14 Appellants invoke the flexible approach to retractivity that the Supreme Court first articulated in linkletter V. Walker, U.S. 618. 14 L. Ed.2d 601,85 S.Ct. 1731 (1965).n 15 and that this court adopted in Mendes V. Johnson, 389 A. 2d 781 (D.C. 1978)(en banc) In Mendes we held That whether and to what extent A decision of this court announcing a new rule of law will be retroactive is A matter of "Judicial Policy" Id at 788. That Policy we stated, requires an Individualized, case by case basis Analysis of " The prior history of the rule in question, it's purpose and effect, and whether retrospective operation will further of retard it's operation. Id. at 788-89 (quoting Linkletter. 381 U.S. at 629). We identitied four "specific criteria" that the court would consider in conducting this analysis:(1) The extent of the reliance of the parties on the old rule (including the degree of justifiable reliance and the hardship which might result to the litigants as a result of retrospective application);(2) Avoidance of altering vested contract or property right; (3)The desire to reward plaintiffs who seek to initiate just changes in the law, and (4) The fear of burdening the administration of Justice by disturbing decisions reached under the overruled precedent."
Mendes, 389 A.2d at 789. These criteria, we stated were " Central" in determining whether a new rule of law should have "total retroative as well as prospective appliction, partial retroactive application (i.e., retrative application of the new rule to the parties to the case in addition to prospective application).(or) Purely prospective application. "Id. n 16 n 14  Harper V. Virginia Dep't of Taxation, 509 U.S. 86,94 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993) (quoting Kuhn V.Fairmont Cool co., 215 U.S. 349, 373,54 L. Ed. 228,30 S. Ct 140 (1910) (Holmes, J., dissenting). See,eg., United States V. Schooner Peggy, 5 U.s. (1 cranch) 103, 110, 2 L.Ed.49 (1801). The court of the District of Columbia Historically adhered to the traditional view of retroactivity. See Jawish V. Morlet, 86 A. 2d 96, 97 (D.C. 1952); Ruppert V. Ruppert, 77 U.S. App. D.C. 65,68 134 F. 2d 497, 500 (1942).

Exhibit-C

Appellants further argue that, as in french, the factors enumerated in Mendes weigh in favor of limitting Noble's New rule of law to purely prospective application. n18 - appellants cheifly emphasize that for years D.C. Code offenders and District officials alike reasonably relied on the pre- Noble understanding that revocation of parole would not result in loss of street time, and that prisoners in the District sustained palpable hardship when the Department of Corrections recomputed and lengthened their sentences by months or years in response to Noble.
In Mendes this court agreed that "where retroactive application of a new rule would result in substantial disruption of settled transctions and/or injustice to a party because of reliance on the continued validity of the prior legal rule espscially one of long standing courts are extremely reluctant to accord retroactive effect to overuling decisions."Mendes 389 A 2d at 789. We also stated that the significance of this factor depends in part on "the dree of hardship that the parties before the court, and others in general, may sustain as a result of the retroactive application." Id at 790./Appellants may well overstate the strength of the reliance factor in this case. Disappointment of expectations is not the same thing as detrimental reliance. The record does not establish that appellants (or any other D.C. offenders who were adversely affected by Noble) actually did rely to their detriment on the pre-Noble"rule, in the sence that they irrevocably changed their position, or would have acted differantly if they had known that revocation of parole would entail loss of street time credit. The record likewise does not affirmatively establish that any D.C. Code offender were actually prejudiced because the board of parole would not have revoked their parole if it had correctly apprehended the consequences. In contrast, French did present a case in which the element of detrimental reliance was clearly established. Thatsaid, the reliance factor in this case is not deminimis. We think that appellants make a plausible prima facie, if not nacessarily an overwhelming or unanswerable one. For non- retroactive application of Noble the principles of Mendes.
The Ex Post Facto claues flatly prohibits retroactive application of penal legislation. Article I § 10.cl i, prohibits states form passing another type of retroactive legislation laws "impairing the obligation of contracts. The fifth Amendment's takings clause prevents the legislature (And other government actors) form depriving private persons of vested property rights except for a public use' and upon payment of just compensation. 'The prohibitions on bills of attainder' in art. I, § § 9-10,prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct.....

Exhibit - D

D

The due process clause also protects the interest in fair notice and repose tha may be compromised by retroactive legislation, A justification sufficient to validate A statutes prospective application under the cluse may not suffice' To warrant it's retroactive application.

The reliance interests are overridden by retroactive application of the new rule. 389 A. 2A at 789-90. This cann fairly be characterized as an open-ended inquiry that is bereft of standards to guise it, exactly whose reliance should be considered, how that reliance is to be established and measured, whether there were signals that the prior rule should not be relied upon, whether it was reasonable to expect the litigants and others to pick up on thoses signals and conduct themselves accordingly. What kind and degree of hardship should be considered. How to determine and assess the hardship. Are some of the questions that the appellate Court is expected to resolve. Moreover, although these questions are partly factual, the court is expected to answer them without the benefit of a true evidentiary record detailing the extent to which the old rule of law was relied upon. The court is compelled to speculate, and to base it's answers on hypotheses that are untested and probably untestable.

Exhibit - E

See District of Columbia V. Cooper, 483 A.2b 317, 322 (D.C. 1984): Curry-Bey V. Jackson, 422 F. Supp. 926,932 (D.D.C.19-76). While District Authoritities Supervise Prisoners who are confined to D.C. correctional facilities. n1 See D.C. Code §§ 24-206(b) And 24-209 (1996); Franklin V. Ridley, 635 A. 2d 356,357 n.2 (D.C. 199); Goode V. markley, 195 U.S.App. D.C.391,394,603 F.2d 973.976 (1979). Under § 24-209, The Commission must apply D.C. (rather than federal) Parle law to These Inmates. See Walker V. Luther, 830 F. 2d 1208,1217 (2d Cir.1987). see also D.C. Code § 24-1231 (C) 2000 suupp.). In the case of the G T C A However, the Commission Applied It's Construction of that law rather than the corporation Counsels construction. Hence in the Year following the enacment of the G T C A, D.C. Code offenders supervised by the Commission Continued to forfeit street time upon revocation Of parole while locally Supervised offenders did not. Predictably, the Commission's interpretation of the G T C A soon challenged by A federally designated D.C. Code Offender who was deprived of street time credit when his Parole was revoked. Joseph Michael Tyler instituted this challenge by means of A Habes Corpus Petition in Federal District Court in Alaska after His Parle was revoked in early 1988. The District Court denied relief, and the Court of Appeals for the Ninth Circuit Affirmed in Tyler V. United States, 929 F 2d 451 (9th Cir.1991). Invoking the "Cardinal rule" of statutory construction that repeals by Implication Are disfavored, n2 and specifically rejecting - the D.C. Corporation Counsel's statutory Analysis as 'cursory' illconceived' and overly simplistic," id. at 456, The Ninth Circuit held that "The G T C A did not impliedly repeal the long stnding requirment of section 24-206 that Parole violators forfeit their street time." Id. At 457. The court further held that Tyler was not entitled to retain credit for his street time merely because prisiners in the District did not lose street time upon revocation of their Parole. We cannot seriously entertain an argument that an erroneous stɑtutory interpretation should be perpetuated simply because it would favor A prisoner who has not yet benefited from it.: Id. n2 Id. At 454. see MORTON V. mancari, 417 U.S. 535,550, 41 L Ed. 2d 290, 94 S.Ct. 2474 (1974) (In The absence of some affirmative showing of an intention to repeal, The only Permissible Justificatin for A repeal by implication is when the earlier and later statution are irreconcilable) Depite the decision in Tyler. The Corporation Counsel neither abandoned it's interprrtation of the G T C A Nor sought A clarifying ststutory Amendment from The Council. See Noble, 693 A.2d at 1102-03. Instead, T he Council implicitly repealed The street time forfeiture provision of § 24-206 (A) when it enacted the G T C A.
For It's parts, the Department of Corrections also ignored Tyler and continued to credit prisoners in it's custody with street time Notwithstanding the revocation of their parole. We nonetheless fully appreciate, as appellants argue, that even if the effect of the sentence recalculation required by Noble was mitiby release from prison.

The extention of the parole term (And the concomitantly in-creased risk of revocation and reimprisonment) in it- self represented a sustantial restriction on liberty. Meanwhile the D.C. Circuit remanded Matthew Noble's Habeas Corpus pe-tition to the District Court for resolution in light of our decision the District Court held that Noble could not com-plain about the application of our ruling about the appli-cation of our ruling him, because as a federal prisoner he had no legitimate expectation otherwise, since the commis-sion had never credited D.C. Code offenders in federal cus-tody with street time following revocation of their parole. Accordingly the District Court denied Noble's Habeas Corpus petitione. See NOBLE V. UNITED States Parole Commission,32F. Supp. 2d 11(D.D.D.1998). Indctum, however, Thecourt opined that the District ought not to apply our ruling in Noble retroactively to inmates under it's Supervision, since those persons did have "THE RIGHT TO RELY ON THE DISTRICT OF COL-UMBIA'S PRIOR INTERPRETATION OF IT'S OWN LAWS." Id. at 14. n5 To be precise, The Department Of Corrections credited the parolee with their street time that accured up until the violation accued but not for time parole between the issur-ance of the warrant and the ultimate revoction of parole.

"DISCUSSION"
Emphasizing that Noble invalidated A formal regulation of the Department of Corrections and seversed the understand-ing, in the District Of Columbia at lease, that revocation o of Parole entails no loss of street time credit, Appellants urge us to declare our holding in Noble to be Purely Pros-pective in, effect, i.e.; not applicable to persons who committed their offenses before the issuance of our decision.

Exhibit-G

# Doctors push care, not prison, for drug addicts

By Steve Sternberg
USA TODAY

WASHINGTON — Research sponsored by a group of the nation's leading doctors concludes that drug addiction is a chronic illness that can be treated as readily as hypertension, diabetes and asthma.

The research also shows that treatment is a better and cheaper anti-crime measure than prison. Yet a separate study in today's Journal of the American Medical Association (JAMA) reports that the public prefers jailing drug offenders to treating them.

The doctors' research, based on an analysis of more than 600 studies, was commissioned by Physician Leadership on National Drug Policy, a new group that wants to tip public opinion toward treatment and away from prisons.

"Incarceration reduces drug use only temporarily and at great expense," the University of Pennsylvania's Thomas McLellan, lead author of one of the studies, said Tuesday.

For instance, he said, spending $2,800 to $9,000 on drug treatment can save $19,000 in crime-related costs. Imprisoning one drug abuser costs about $25,900 a year.

The White House office of drug policy on Tuesday endorsed the doctors' approach.

Heading the 37-member doctors group is June Osborn, former chair of the National Commission on AIDS. It includes David Kessler, former commissioner of the Food and Drug Administration; Louis Sullivan, President Bush's secretary of Health and Human Services; and the editors of leading medical journals.

Osborn said the evidence is unequivocal that drug abuse is an illness. Although addicts bear responsibility for their plight, she said, so do people with heart disease who smoke and diabetics who eat poorly. "We were telling people to 'just say no,' when addiction is a biological event."

McLellan cited evidence from studies of twins, the best source of information on inheritance, that shows the risk of inheriting a vulnerability to addiction is roughly the same as the risk of inheriting asthma or diabetes.

Other studies show that addictive drugs alter the wiring of the brain, making it harder for some people to stop taking them once they've started. Ninety-five percent of youths try drugs or alcohol at some point, McLellan noted.

The studies show that drug abusers comply with abstinence-oriented treatment about as well as people with recognized chronic illnesses stick with their therapy.

Sue Rusche of the anti-drug parents group National Families in Action in Atlanta endorses the notion that drug abusers should be treated. She says, however, that lawbreakers should be punished.

The study in JAMA shows that her opinion is widely held. The analysis of opinion surveys by researchers at the Harvard School of Public Health found that 78% of Americans view the nation's "war on drugs" as a failure, yet they favor "more severe penalties for the possession and sale of drugs."

Exhibit-H

## Treatment vs. prison

Annual cost per drug addict

| Category | Cost |
|---|---|
| Regular outpatient | $1,800 |
| Intensive outpatient | $2,500 |
| Methadone maintenance | $3,900 |
| Short-term residential | $4,400 |
| Long-term residential | $6,800 |
| Incarceration | $25,900 |